IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**GARVETTA CAMPBELL, o/b/o E.M.J.,**

    **Plaintiff,**

vs.                                                 **CASE NO. 1:08-CV-201-MMP/AK**

**MICHAEL J. ASTRUE,**
**Commissioner of the Social Security Administration,**

    **Defendant.**

                                   /

### REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's protective application for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.    PROCEDURAL HISTORY**

Plaintiff protectively filed an application for SSI on May 3, 2005, alleging a disability onset date of August 1, 2001. Plaintiff petitioned for a hearing before an administrative law judge (ALJ). The ALJ conducted a hearing on January 7, 2008, and

entered an unfavorable decision on March 19, 2008. On July 16, 2008, the Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

## B.  FINDINGS OF THE ALJ

The ALJ found that Plaintiff was a preschooler[1] on May 3, 2005, the date the application was filed, and at the time of the decision Plaintiff was a school-age child. Since Plaintiff has been a minor child at any time relevant to the decision, she has not engaged in substantial gainful activity.

The ALJ also found that Plaintiff has the following severe impairments: asthma, seizure disorder, and polycystic kidney disease. Plaintiff's impairments interfere with her academic performance and are therefore more than mild impairments. However, Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Further, she does not have an impairment or combination of impairments that functionally equal the listings. Therefore, the ALJ found that Plaintiff has not been disabled, as defined in the Social Security Act, since May 3, 2003, the date the application was filed.

## C.  ISSUES PRESENTED

Plaintiff argues that the ALJ failed to elicit a knowing and intelligent waiver from Plaintiff's mother of their right to counsel, which resulted in prejudice to the child's claim.

---

[1]The ALJ incorrectly found that Plaintiff was a preschooler on May 3, 2005, the date that the application was filed. At the time, Plaintiff was almost 9 years old and she was a school-age child. Since Plaintiff did not raise this issue in her brief, this Court assumes that Plaintiff did not consider it significant enough for judicial review.

**No. 1:08CV201-MMP/AK**

The Commissioner responds that Plaintiff was properly informed of her right to representation and she knowingly and intelligently waived it. Plaintiff and her mother received numerous notices informing them of the right to representation, and they chose to appear and testify without the assistance of an attorney or other representative. Plaintiff had been represented prior to the hearing, but her attorney withdrew after Plaintiff relocated to Florida. Plaintiff's mother consulted Legal Aid in Florida, but Legal Aid was unable to represent her at the hearing due to a short notice. Therefore, Plaintiff's mother chose to appear at the hearing without representation. During the hearing, the ALJ advised that he could postpone the hearing to allow additional time to obtain representation. In response, Plaintiff's mother indicated that she wished to proceed with the hearing.

The issue thus presented is whether the ALJ's conclusion that Plaintiff's mother knowingly and intelligently waived her right to counsel is supported by substantial evidence in the record and decided by proper legal standards.

D.  **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

> Childhood disability is defined by the regulations:
>
> An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death, or which have lasted, or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(1).

**No. 1:08CV201-MMP/AK**

The regulations set forth a three-step sequential evaluation process:

1. The ALJ must determine if the child is performing substantial gainful activity;
2. If not, the ALJ must determine whether the child's impairments are severe; and
3. If severe, the ALJ must determine whether the impairments meet or equal the severity of a listed impairment. 20 C.F.R. § 416.924.

If the ALJ finds that the impairments are severe, but do not meet the listing requirements, he may find that the impairments result in limitations that functionally equal the listings. 20 C.F.R. § 416.926a. To establish functional equivalence in step 3, the ALJ must have a medically determinable impairment that results in marked limitations in two functional domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. 416.926a.

E.   **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff was born on May 18, 1996. On February 4, 2004, a radiology report indicated findings of adult polycystic kidney disease. (R. 180). Plaintiff has been suffering from asthma; however, in August 2004, her pulmonary function testing results were normal. (R. 204-23). In March 2005, Plaintiff was diagnosed with a seizure disorder. (R. 170-74). The results of Plaintiff's CT and MRI scans of the head and brain were normal. (R. 171, 168).

**No. 1:08CV201-MMP/AK**

In March 2005, Jacqueline Kiefel, Ph.D., performed a neuropsychological evaluation of Plaintiff. (R. 183-91). She noted a number of functional limitations regarding non-verbal functions, including visual matching, discrimination and visuoconstructive skill. (R. 188). The doctor also recognized that Plaintiff had "fine motor slowing" and "slowing on tasks of planning and problem solving." (R. 188). Dr. Kiefel opined that the etiology of Plaintiff's learning, cognitive, and behavioral problems is likely linked to her seizure disorder and it places her at an ongoing academic risk. (R. 188). Plaintiff's academic challenges were also noted in the Administration's Teacher Questionnaire prepared by Plaintiff's fourth grade and interrelated resource teachers on March 27, 2006. (R. 96-103).

F.   **SUMMARY OF THE ADMINISTRATIVE HEARING**

A hearing was held on Plaintiff's application on January 7, 2008. At the hearing, in addition to Plaintiff, Garvetta Campbell, Plaintiff's mother; Diamond Campbell, Plaintiff's sister; and Eartha Campbell, Plaintiff's grandmother, testified on Plaintiff's behalf. The ALJ discussed with Plaintiff's mother that Plaintiff had been previously represented by an attorney when she lived in Georgia. This attorney withdrew after September 14, 2007, the date that Plaintiff relocated to Florida. (R. 343-44). Plaintiff's mother explained that after she received the Notice of Hearing, she contacted Legal Aid, but they were unable to represent her at the hearing due to a short notice.[2] (R. 344). The ALJ suggested considering additional time to enable her obtaining a

---

[2]Notice of Hearing was dated on December 6, 2007. (R. 315-24).

**No. 1:08CV201-MMP/AK**

representative; however, Plaintiff's mother was "not particularly" interested in it, "unless [she] really [needed] an attorney." (R. 345). The ALJ proceeded with the testimony. (R. 345).

Plaintiff's mother testified that Plaintiff suffers from petit mal seizures[3] that are controlled with Depakote. (R. 346, 348). The seizures occur up to two or three times per day. Plaintiff blacks out and when she regains her consciousness, she has no recollection of what happened. (R. 348-49). Plaintiff is scheduled to have a sleep study and a monitored EEG that are necessary to observe her seizure activity at night. (R. 347-48). Plaintiff's current medications include Advair, Zomig, Zyrtec, Nasonex, Echinacea and Tylenol. (R. 352-53). Plaintiff has been diagnosed with kyphosis, which is the curvature of the spine, pyrocystic kidneys and asthma. (R. 357-58).

Plaintiff's mother also testified that Plaintiff does not like to be outside, as spending time outside affects her asthma. (R. 358-59). Plaintiff lives with her mother and sisters in a new apartment complex that is located between Gainesville and Newberry . (R. 358). Plaintiff's mother home schools all her children, even though they live not far from Newberry Elementary School. (R. 345, 359). Plaintiff's mother does not work; she used to work when they lived in Georgia, but she was often called off her job and it was "impossible" for her to continue working. (R. 360).

---

[3]A petit mal seizure (a staring spell or an "absence" seizure") is a brief (usually less than 15 seconds) disturbance of brain function due to abnormal electrical activity in the brain. http://www.nlm.nih.gov/medlineplus/ency/article/000696.htm

**No. 1:08CV201-MMP/AK**

Plaintiff is currently being home schooled. (R. 345). Plaintiff attended an elementary school in Georgia up to the fourth grade. (R. 349). After she was diagnosed with a seizure disorder, the school revised her Individual Educational Plan (IEP), and Plaintiff was having a lot of problems. (R. 346). Plaintiff was losing instructional time when she was experiencing seizures, and this affected her performance in school. (R. 349). She often wakes up at night and wanders around the house or stands in the dark. (R. 361-62). Such episodes made it very hard for her to function well in the morning and attend school. (R. 361).

Plaintiff's mother further testified that Plaintiff needs someone to read instructions aloud to her. (R. 350). In the mainstream education classroom, her teacher was unwilling to do that. (R. 350). Plaintiff's mother is now home schooling her. (R. 352). Plaintiff is also enrolled in online Florida Virtual School and an extended pace Read Please program. (R. 352). Sometimes she may need additional help due to her comprehension problems. (R. 352). Plaintiff has difficulties in following simple instructions; if she is asked to do three things, she may complete only one of them. (R. 361). Her mother suspects this is caused by her short-term memory loss or auditory processing issues. (R. 361).

Plaintiff is taking three classes online, including typing, reading and world culture. (R. 362). Some of the lessons are long and after 30 minutes she takes a break. (R. 362). In her reading class, she is reading a book called Soccer Circus. Plaintiff and her mother are taking turns in reading it aloud. (R. 363).

**No. 1:08CV201-MMP/AK**

Plaintiff has a list of Web sites that visits. (R. 364-65). She can write a short note on a computer and print it out. (R. 365). If her mother tells her what to write, she could also write it down by hand. (R. 365-66). She knows the alphabet. (R. 366-67). She spent Christmas in Florida and Santa Claus, her mother, brought her an MP3 player. (R. 368).

Plaintiff's motor skills are extremely slow. (R. 364). She is unbalanced and rides a bicycle with training wheels. (R. 364). She often roller skates on a carpet. (R. 364).

Plaintiff testified that she likes playing computer games and listening to music. (R. 353-56). When she grows up, she would like to be an actress. (R. 354). She likes dancing, reading Magna magazine and watching tv. (R. 354-57). She has two sisters: Jewel and Diamond; they get along well together. (R. 354-55).

Plaintiff's sister, Diamond, testified that she showed Plaintiff how to print pages on both sides of paper. (R. 369). When they watch tv, Plaintiff often misses something and asks for explanation of what happened because she does not remember it. (R. 369).

## G.  DISCUSSION

Plaintiff argues that the ALJ erred by failing to inform her of her right to representation and obtain a knowing and intelligent waiver of that right. The record, however, demonstrates that Plaintiff was given sufficient notice of her right to representation. As the ALJ noted, prior to the hearing, Plaintiff and her mother received multiple correspondence informing them of their right to representation, including Notice

**No. 1:08CV201-MMP/AK**

of Hearing dated December 6, 2007. (R. 14, 42-45, 46-49, 36-39, 315-19). During the hearing, Plaintiff's mother explained that a Gwinnett Legal Aid attorney previously represented them but withdrew on October 31, 2007, after Plaintiff's relocation to Florida. (R. 28, 50, 344). After she received Notice of Hearing, Plaintiff's mother consulted Legal Aid in Florida who Aid declined to accept the case due to a short notice. (R. 344). Thus, it is reasonable to assume that Plaintiff, through her mother, understood the advantages of having legal representation and knowingly elected to appear without one at the hearing. During the hearing, the ALJ advised that the hearing could be postponed to obtain representation, but Plaintiff's mother chose to proceed without a representative. (R. 345).

An ALJ has a clear duty to fully and fairly develop the administrative record. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). This duty is heightened where a claimant is unrepresented, and this special duty essentially requires the development of a record that shows the claimant was not prejudiced by lack of counsel. Id.; Ellison v. Barnhart, 355 F.3d 1272 (11th Cir. 2003). In carrying out this duty, an ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Smith v. Schweiker, 677 F.2d 826 (11th Cir. 1982). In all such cases, there must be a showing of prejudice before remand is warranted for further development. Brown, 44 F.3d at 935; Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985). Prejudice has been found when the record has "evidentiary gaps which result in unfairness or 'clear prejudice.'" Brown, 44 F.3d at 935, *quoting* Ware v. Schweiker, 651 F.2d 408 (5th Cir.

**No. 1:08CV201-MMP/AK**

Unit A July 1981), cert. denied 455 U.S. 912.  An ALJ is not required to order medical evidence to have a complete record unless the record establishes that it is necessary to enable the ALJ to render his decision.  Holladay v. Bowen, 848 F.2d 1206 (11th Cir. 1988) (concerning the ordering of a consultative examination); Kelly, 761 F.2d at 1540 (concerning additional medical information submitted by the claimant).

In the instant case, Plaintiff failed to show that she was prejudiced by lack of representation during the hearing.  The ALJ diligently questioned Plaintiff, her mother, her sister and her grandmother regarding Plaintiff's impairments and limitations.  (R. 340-72).  There is no indication in the medical evidence that there are any evidentiary gaps that may result in unfairness or clear prejudice to Plaintiff.  Even though Plaintiff speculates in her brief that an additional opinion from Dr. Kiefel could have found that Plaintiff's impairments functionally equaled a listed impairment, the ALJ was not required to request such an opinion unless he found the record inadequate to make a final determination.  Here, the evidence of record was adequate to make a decision.  Therefore, the ALJ fully and fairly developed the record based on the claims and evidence presented by the Plaintiff.

There is no merit to this argument.



Accordingly, it is respectfully **RECOMMENDED**:


**No. 1:08CV201-MMP/AK**

That the decision of the Commissioner denying benefits be affirmed.

At Gainesville, Florida, this **4th** day of February, 2010.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:08CV201-MMP/AK**